IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| VERNON K. MENDENHALL,<br><br>    Plaintiff,<br><br>vs.<br><br>WAL-MART STORES, et al.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER CONSIDERATION<br><br><br>Case No. 2:07-CV-21 |

This matter comes before the court in this ERISA case on cross motions for summary judgment.[1] As the motions and supporting memoranda assert overlapping arguments, they will be dealt with simultaneously. For the reasons discussed below, Plaintiff's Motion for Summary Judgment will be denied and the case remanded for an evaluation under an "any occupation" standard. Defendants' Motion for Summary Judgment and Motion to Strike will be denied as moot.

I.   Background Facts

Plaintiff Vernon Mendenhall ("Plaintiff") was a long haul trucker for Wal-Mart.

---

[1]Docket Nos. 23 and 25.

Defendants are Wal-Mart Stores ("Wal-Mart"), Group Short Term Disability and Long Term Disability Plan for Employees of Wal-Mart Stores (the "Plan") and Hartford Life & Accident Insurance Company ("Hartford").

Plaintiff participated in a Wal-Mart disability benefit plan for eligible employees of Wal-Mart ("the Plan"). Hartford is the fiduciary and the claims administrator for the Plan and made determinations about Plaintiff's eligibility for benefits. The Plan provides benefits in the event that a participant becomes totally disabled, which is defined as:

> (1) during the Elimination Period; and
> (2) for the next 12 months, you are prevented by:
>   (a) accidental bodily injury;
>   (b) sickness;
>   (c) Mental Illness;
>   (d) Substance Abuse; or
>   (e) pregnancy,
>
> from performing the Essential Duties of Your Occupation, and are under the care of a Physician and as a result you are earning less than 40% of your Pre-disability Earnings, unless engaged in a program of Rehabilitative Employment approved by us.
>
> After that, you must be so prevented from performing the essential duties of any occupation for which you are qualified by education, training or experience.
>
> "Your occupation" includes similar job positions with the Employer, which may be offered to you, with a rate of pay 60% or greater of your Indexed Pre-disability Earnings.[2]

Plaintiff began having seizures and stopped working in September 1996. His disability payments began in December 1996 (after the 90-day Elimination period) and continued through April 30, 2006. Plaintiff was under the care of several physicians and took anti-seizure medication. Parties dispute how well the seizures were controlled by medication but there

---

[2] AR06178.

appears to have been at least some improvement. However, Plaintiff did continue to have seizures on occasion and began to complain of drowsiness and other ailments.

In 2003, Hartford conducted a Rehabilitation Review that indicated that there was no other occupation that would also meet the 60% earnings qualifier.

Throughout this period, Plaintiff's doctors reported that while the seizures appeared to be controlled by medication, Plaintiff was unable to obtain a commercial drivers license ("CDL"), which was required for Plaintiff to resume his former position as a truck driver. He did eventually obtain a regular drivers license. On January 31, 2006, Dr. Watson indicated in the drivers license paperwork that Plaintiff was restricted from nighttime driving and made a notation that read: "CDL will not allow." The nighttime driving restriction was lifted on March 22, 2006. At that point, Plaintiff had been seizure-free for over a year and a half.

On April 5, 2006, an employability analysis concluded that beyond truck driving, no other occupations could be identified for Plaintiff that would meet the 60% earnings qualifier.

Plaintiff received a letter dated May 4, 2006, indicating that because he no longer met the definition of "Total Disability," his disability benefits would be terminated after April 30, 2006. There is a dispute as to which information Hartford relied upon in making its determination. Hartford contends that because the nighttime restriction had been lifted, Plaintiff had not had a seizure for over 18 months and had obtained a drivers license, he could return to work. Plaintiff does not dispute any of those facts but argues that he still was unable to obtain his CDL because he had suffered seizures within the last five years, which prevents his obtaining a CDL license under federal regulations. Hartford does not dispute the notations made by Plaintiff's physicians regarding his inability to obtain a CDL.

Plaintiff appealed the denial of benefits in a letter dated May 22, 2006, which included

the May 18, 2006 letter from Dr. Watson indicating that Plaintiff should not be driving a truck. Hartford upheld the denial, indicating that "the preponderance of evidence supports Mr. Mendenhall's ability to perform the essential duties of his own occupation. As such, he does not meet the definition of disability, and the decision to terminate the claim was correct."[3] Dr. Carter, another of Plaintiff's physicians, wrote a follow-up letter on September 26, 2006, indicating that Plaintiff continues to have seizures, the most recent being in June of 2006, and is unable to drive any vehicle requiring a CDL license. Hartford did not consider this letter in the appeal.

    II.       Procedural History

Plaintiff filed his Complaint[4] on January 16, 2007, seeking payment of long term disability benefits, pre- and post-judgment interest and attorney's fees. Plaintiff seeks summary judgment on the grounds that Hartford's denial of benefits was arbitrary and capricious and therefore, Plaintiff's benefits should be reinstated. Hartford contends that their denial was not arbitrary and capricious and that, in any case, under the plain language of the Plan, Plaintiff no longer qualifies for benefits. Plaintiff also filed a Motion to Strike.[5]

    III.      Discussion

        A.       Summary Judgment

            1.       Standard of Review

"A denial of benefits under [ERISA] is to be reviewed under a de novo standard unless

---

[3] Pl.'s Mem. in Supp. of Summ. J. ¶ 76 (Docket No. 24).

[4] Docket No. 2.

[5] Docket No. 47.

the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[6] When the administrator has discretionary authority to determine eligibility, the arbitrary and capricious standard of review applies and "the decision will be upheld so long as it is predicated on a reasoned basis. In fact, there is no requirement that the basis relied upon be the only logical one or even the superlative one. Accordingly, [the court's] review inquires whether the administrator's decision resides somewhere on a continuum of reasonableness – even if on the low end."[7] Further, "[s]ubstantial evidence is of the sort that a reasonable mind could accept as sufficient to support a conclusion" and is "more than a scintilla, of course, yet less than a preponderance. The substantiality of the evidence is evaluated against the backdrop of the administrative record as a whole."[8] In applying this standard, the Court is to "consider the evidence before the plan administrator at the time he made the decision to deny benefits."[9]

However, "when an inherent conflict of interest . . . exists and the plan administrator has denied coverage, the district court is required to slide along the scale considerably and an additional reduction in deference is appropriate."[10] The burden shifts "to the fiduciary to justify the reasonableness of its decision."[11]

---

[6] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[7] *Adamson v. UNUM Life Ins. Co. of America*, 455 F.3d 1209, 1212 (10th Cir. 2006) (internal quotations and citations omitted).

[8] *Id.* (internal citations omitted).

[9] *Id*. at 1214.

[10] *Fought v. UNUM Life Ins. Co. of America*, 379 F.3d 997, 1007 (10th Cir. 2004).

[11] *Id*. at 1006.

In this case, Plaintiff argues that because Hartford is both the plan administrator and the payor of benefits, there is an inherent conflict of interest and the appropriate standard of review is significantly less than the arbitrary and capricious standard. Hartford asserts that there is only a "standard" conflict of interest and that the Court should only consider that conflict as a factor in determining whether the decision to deny benefits was arbitrary and capricious. The parties concede that some conflict of interest existed because Hartford is both the plan administrator and the payor of benefits. The appropriate standard of review is something less deferential than arbitrary and capricious, but not *de novo*. The Court must take "a hard look at the evidence and arguments presented to the plan administrator to ensure that the decision was a reasoned application of the terms of the plan to the particular case, untainted by the conflict of interest."[12]

There is a disagreement between the parties with respect to the evaluations made after the first 12 months of disability. The parties agree that during the first 12 months of disability, benefits are evaluated under an "own occupation" standard, using an earnings qualifier of up to 60%. However, Hartford contends that after the 12 months, the inquiry shifts to "any occupation" and there is no earnings qualifier. Plaintiff disputes this, arguing that because Hartford consistently used an "own occupation" inquiry and a 60% earnings qualifier, particularly in the correspondence with Plaintiff, they are required to continue to do so.

The Court concludes that Hartford's decision to terminate benefits was unreasonable. Hartford's letters to Plaintiff indicated that the evaluation was carried out under an "own occupation" standard. Under that standard, Hartford had an obligation to consider the requirements of Plaintiff's occupation within the confines of state and federal regulations. It did

---

[12]*Id*.

not do so. Therefore, the Court finds that Hartford's conclusion that Plaintiff could perform his own occupation was unreasonable as not supported by substantial evidence.

The Court recognizes that the Hartford may have been evaluating Plaintiff more favorably than he was entitled by using an "own occupation" standard and the earnings qualifier. However, this is not clear from the record before the Court. Therefore, the Court will remand for a re-consideration under the plain language of the Plan.[13]

The Court finds Hartford to be negligent in its responsibility to perform evaluations that adhere to the plain language of the Plan it is administering. However, Hartford's negligence does not mandate reinstatement of Plaintiff's benefits.[14] Therefore, Plaintiff's request at oral argument that benefits be reinstated from the date of denial, April 30, 2007, is denied. Plaintiff's request for prejudgment interest is also denied as premature. Prejudgment interest need only be considered if Plaintiff ultimately prevails. It is therefore

ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 23) is DENIED. It is further

ORDERED that this case be remanded to the plan administrator for further consideration under the Plan's "any occupation" standard. It is further

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 25) and Motion to Strike (Docket No. 47) are DENIED AS MOOT.

---

[13] *Caldwell v. Life Ins. Co. of North Am.*, 287 F.3d 1276, 1288 (10th Cir. 2002) (remanding is appropriate when the ERISA administrator fails to make adequate findings or to explain adequately the grounds for denial).

[14] *See DeGrado v. Jefferson Pilot Financial Ins. Co.*, 451 F.3d 1161, 1176 (10th Cir. 2006) ("retroactive reinstatement of benefits is proper where . . . no evidence in the record supported a termination or denial of benefits") (internal citations and quotations omitted).

DATED   December 18, 2007.

                                       BY THE COURT:

                                       _____
                                       TED STEWART
                                       United States District Judge